UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AMY JOE FRIZZO,

    Plaintiff,

v.                                                                     CASE NO. 6:19-CV-468-ORL-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## ORDER

This is an appeal of the administrative denial of disability insurance benefits (DIB) and period of disability benefits.[1] *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff argues the administrative law judge (ALJ) erred by failing to comply with this Court's remand order and the Appeals Council's remand order with respect to evaluating the opinions of James Levasseur, Ph.D., a state agency non-examining psychologist, and by failing to comply with the Appeals Council's remand order with respect to evaluating the opinions of Ronald Chase, M.D., a state agency non-examining physician. After considering the parties' joint memorandum of law (doc. 30) and the administrative record, I find the Commissioner complied with the remand orders and that her decision is supported by substantial evidence. I affirm.

    A.    *Background*

Plaintiff Amy Jo Frizzo, born on February 20, 1974, was thirty-five years old on her alleged onset date, June 30, 2009. She attended school through the eleventh grade, earned a GED, and worked as a waitress and dry cleaner attendant. Unfortunately, she has a history of alcohol and substance abuse, and stopped working when her mental issues "became too much to handle" (R.

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

1

789). She testified that she is now abstinent from alcohol and completed an Alcoholics Anonymous program (R. 796). She lives with her husband who is a maintenance man at a church (R. 789). She testified she suffers from depression and hears voices, and explained that she has trouble concentrating, focusing, and "keeping a clear head" (R. 792). In addition to mental issues, she also suffers from herniated and ruptured discs in her low back (R. 792). Since her alleged disability onset date, she has worked part-time for $5.00 an hour as a seasonal pool supervisor at her neighborhood swimming pool from Memorial Day to Labor Day (R. 769-770; 2647).

This case has a long procedural history. In a nutshell, Plaintiff has appeared four times before ALJs for administrative hearings, and this is the fourth time her disability claims are the subject of an appeal to district court. Most recently, on February 2, 2018, the district court granted the Commissioner's motion to remand centered around the previous ALJ's failure to follow the Appeals Council's prior remand order which directed the ALJ give further consideration to medical opinions of James Levasseur, Ph.D., a non-examining state agency psychologist who completed a Physical Review Technique (PRT) and Mental Residual Functional Capacity Assessment (MRFC) on June 17, 2010 (R. 2806-2815).[2] *See* case no. 6:17-cv-621-Orl-GJK, doc. 24 (Magistrate Judge Kelly's report and recommendation granting Commissioner's motion for remand pursuant to sentence four of section 205(g) of the SSA) and doc. 25 (District Judge Dalton's order adopting Report and Recommendation). Thereafter, the Appeals Council entered

---

[2] Specifically, the district court found that the previous ALJ failed to consider or weigh Levasseur's PRT when considering Plaintiff's RFC if she were not dependent on substances (the Post-dependency RFC). *See* Order, R. 2810. The district court also found that the ALJ failed to discuss or weigh Levasseur's MRFC in any portion of his decision. The district court noted that Levasseur found Plaintiff "has some reduction in social interaction and stress tolerance that would limit her to work environments of low social demand." The district court further noted that the ALJ "did not include any social limitations in the Post-Dependency RFC or explain why these limitations from the PRT and the [MRFC] were excluded from the Post-Dependency RFC." *See* case no. 6:17-cv-621-Orl-GJK, doc. 24; R. 2810.

an order on May 8, 2018, that in pertinent part directed a new ALJ be assigned to resolve the following issue:

> This case has been previously remanded. In the court remand order, the court found reversible error in giving 'great weight' to the PRT form of non-examining physician Dr. Levasseur (Exhibit 18F). The PRT form stated claimant had moderate limitations in social functioning, but the residual functional capacity (RFC) included no social limitations, and the decision gave the opinion 'great weight' without any qualification (Exhibit 18A, p. 8-12). The Court also found error in not weighing Dr. Levasseur's MRFC form at Exhibit 18F, which contained additional explanation of the claimant's social limitations (Exhibit 18A, p.10). The Appeals Council vacated the decision and ordered additional proceedings consistent with the court's order (Exhibit 19A). It does not appear this error was fixed on remand. Instead, the decision uses the same language that the court previously found problematic (January 12, 2017 ALJ decision, p. 11, Exhibit 11A, p.12). The court has already determined that the underlying error is not harmless (Exhibit 18A, p. 12). Furthermore, the decision does not state the weight given to state agency physician Ronald Chase, who applied the psychiatric review technique and found moderate limitations in social functioning (Exhibit 7A, p.6) and opined that the claimant had "moderate tolerance to criticism from others and authority figures" (Exhibit 7A, p. 11). This appears to contain greater limitations than the decision lists for the claimant when there is no drug or alcohol abuse (ALJ decision, p. 21-23). On remand, the ALJ will reconsider both opinions, consistent with the pertinent regulations.

(R. 2821). Following the remand order, a new ALJ held a hearing on October 5, 2018, then entered a forty-seven-page decision. The ALJ found that from June 30, 2009, through her last date of insured, September 30, 2014, Plaintiff had the following severe impairments: disorders of the spine; obesity; carpal tunnel syndrome, right greater than left; trauma and stressor-related disorders; an affective disorder; personality disorder; alcohol abuse/dependence disorder; marijuana abuse; polysubstance abuse; and an alcohol-induced depressive disorder (R. 2634). The ALJ concluded that from June 30, 2009, through June 30, 2011, "based on all of the impairments, including the substance use disorders, the claimant has the residual functional capacity to perform [a limited range of] light work as defined in 20 CFR 404.1567(b) …" Specifically, the ALJ limited Plaintiff to "simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes; no interaction with the public; occasional interaction with co-workers and

supervisors; and would require unscheduled breaks exceeding employer tolerances" (R. 2637). In reaching this RFC for the time period from June 30, 2009, through June 30, 2011, the ALJ noted that "the United States District Court did not disturb the prior administrative law judge's finding that claimant was disabled when considering the claimant's substance use disorder." (R. 2637).[3]

The ALJ formulated a different RFC for June 30, 2009, through June 30, 2011, if the claimant stopped the substance abuse, and for the period in which she stopped her substance use, July 1, 2011, through her date last insured of June 30, 2014. She explained:

> If the claimant stopped the substance use for the period from June 30, 2009, through June 30, 2011, and for the period when she did stop her substance use, which began on July 1, 2011, and continued through her date last insured of September 30, 2014, the claimant would have had/had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the ability to lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently; stand/walk for about 6 hours and sit for about 6 hours in an 8-hour workday; with normal breaks; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; occasionally reach overhead bilaterally; frequently handle and finger bilaterally; avoid the use of moving machinery and all exposure to unprotected heights; and work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes.

---

[3] The Social Security Act "preclude[s] the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled." *Doughty v. Apfel,* 245 F.3d 1274, 1275 (11th Cir. 2001); *see* 42 U.S.C. § 423(d)(2)(C). Thus, when the ALJ finds that a claimant is disabled and there is medical evidence of drug addiction or alcoholism (as the ALJ did here), the ALJ must determine whether the drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a). The key factor in determining whether alcoholism is a contributing factor material to the determination of a disability (the "materiality determination") is whether the claimant would still be found disabled if she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1). The ALJ makes this determination by first evaluating which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol. 20 C.F.R. §404.1535(b). The ALJ then must determine whether any or all of the remaining limitations would be disabling; if the remaining limitations are not disabling, then the ALJ must find that the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability (as the ALJ did here). 20 C.F.R. § 404.1535(b). Plaintiff has not asserted that the ALJ erred in reaching this conclusion.

4

(R. 2652-2653). The ALJ opined that, with this RFC, Plaintiff cannot perform her past relevant work, but can work as a housekeeping cleaner, cafeteria attendant, and routing clerk (R. 2674). After the ALJ's decision became final, Plaintiff filed this action.

      *B.*      *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations. These regulations establish a "sequential evaluation process" to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

*C. Discussion*

The ultimate responsibility for reviewing and assessing Plaintiff's RFC rests with the ALJ. RFC is an assessment based on all relevant medical and other evidence of Plaintiff's ability to work despite her impairments. *Castle v. Colvin*, 557 Fed. Appx. 849, 852 (11th Cir. 2014) (citing *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1987)). In rendering the RFC, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1529(c)(3), 404.1545(a), (e). Generally, the opinions of examining physicians are given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 404.1527(c)(1-5). The ALJ may rely on the opinions of state agency medical consultants who are highly qualified and whose opinions may be entitled to great weight if the evidence in the

record supports them. *See* Social Security Regulation (SSR) 96-6p; Fed.Reg. 34466, 1996 WL 362203 (July 2, 1996) (rescinded by SSR 17-2p, 1996 WL 362203, effective March 27, 2017); *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. Appx. 869, 873 (11th Cir. 2011) ("The weight due to a non-examining physician's opinion depends … on the extent to which it is supported by clinical findings and is consistent with other evidence."). Social Security Regulation 96-6p provides:

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by the evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist …

SSR 96-6p, 1996 WL 374180, at *2-3. Thus, in weighing the opinions of state agency physicians or psychological consultants who have not had the opportunity to review all of the claimant's medical records before rendering an opinion, the ALJ who has access to the entire record including the claimant's testimony can determine whether the opinion is supported by and consistent with the evidence of record and whether to afford it great weight.

Plaintiff argues the new ALJ failed to apply the correct legal standards and made findings not supported by substantial evidence. Specifically, she claims the ALJ failed to comply with the Appeals Council's remand order that directed the new ALJ to "reconsider [the opinions of two State Agency non-examining experts, James Levasseur, Ph.D. and Ronald Chase, M.D.] consistent with pertinent regulations." *See* Appeals Council Order, R. 2821. Plaintiff maintains the ALJ erred by failing to properly weigh Levasseur's and Chase's opinions in formulating her RFC for the time period when Plaintiff was no longer abusing substances, July 1, 2011, through her date last insured, June 30, 2014. The ALJ indicated in her decision that the same RFC applies for the earlier period of June 30, 2009, through June 30, 2011, "if the claimant stopped the substance abuse." (R. 2652).

The Commissioner, in response, asserts the new ALJ properly considered the state agency expert opinions and supported her RFC assessment with substantial evidence. I agree, as set forth below.

As a reminder, for the post-dependency time frame, the ALJ concluded:

> If the claimant stopped the substance use for the period from June 30, 2009, through June 30, 2011, and for the period when she did stop her substance use, which began on July 1, 2011, and continued through her date last insured of September 30, 2014, the claimant would have had/had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the ability to lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently; stand/walk for about 6 hours and sit for about 6 hours in an 8-hour workday; with normal breaks; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; occasionally reach overhead bilaterally; frequently handle and finger bilaterally; avoid the use of moving machinery and all exposure to unprotected heights; and work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes.

(R. 2653). In contrast to the ALJ's inclusion of "social limitations" in her RFC for June 30, 2009, through June 30, 2011, when Plaintiff abused substances, the ALJ did not include "social limitations" in Plaintiff's RFC if she stopped the substance abuse for the period of June 30, 2009, through June 30, 2011, and for the post-dependency period, July 1, 2011, through September 30, 2014 (R. 2637, 2653).

Looking at Levasseur's opinions first, the record reveals that Levasseur reviewed Plaintiff's medical records and completed a Psychiatric Review Technique (PRT) and Mental Residual Functional Capacity Assessment (MRFC) on June 17, 2010, as part of the SSA's initial disability determination (R.649-652, 663-665). On the PRT Levasseur indicated that his assessment is for the period of "[blank]     to 6/17/10" (R. 649), and on the MRFC he indicated his assessment is a "current evaluation" (R. 663) (Levasseur did not include a date for the beginning period, hence the insertion of [blank].). On the MRFC Section III Functional Capacity Assessment, Levassear stated: "She is able to understand and follow instructions. She is able to demonstrate a cooperative attitude. She is able to make basic work decisions. She is able to adapt adequately to work

environments. She has some reduction in concentration that would limit pace and persistence occasionally but not at a level that would significantly reduce productivity. She has some reduction in social interaction/ stress tolerance that would limit her to work environments of low social demand." (R. 665).[4] Thus, he did not have the opportunity to review the evidence pertaining to the "post-dependency period." In any event, the ALJ weighed Levasseur's opinions when she assessed the RFC for this time frame (R. 2670).

The ALJ assigned great weight to Levasseur's opinions insofar as they support "the overall finding that the claimant is less limited when she is not abusing substances" (R. 2670). She gave "partial weight" to Levasseur's opinions as a whole, explaining:

> [t]he hearing level evidence establishes that the claimant has mild to moderate limitations in all areas of mental functioning during the period when the substance abuse is not established as material, which is supported by her history of mental health hospitalizations with stabilization once she stopped drinking. It is also supported by the claimant's mental status examination findings as discussed above herein, her work activity and activities of daily living, which all further establish that the history of substance abuse was not material and mental impairments produced mild to moderate limitations for 12 consecutive months during this period.

---

[4] To the extent that Plaintiff asserts the ALJ should have considered the mild and moderate limitations Levasseur indicated Plaintiff had in Section I of the MRFC, these arguments are without merit. The Programs Operations Manual ("POMS") directs that Section I "Summary Conclusions" of the MRFC allows a medical consultant to check various boxes on a worksheet that then serve as an aid for the consultant to use when elaborating the actual RFC assessment on Section III of the MRFC form. *See* POMS DI §24510.060(B)(2). As one court in this district explained, "Checking the box 'Moderately Limited' means only that the claimant's capacity is impaired, it does not indicate the degree and extent of the limitation. After checking the boxes as an 'aid,' a doctor is then required to detail his actual RFC assessment." *Mitchell v. Comm'r of Soc. Sec.*, (citing POMS DI §§ 24510.060(B)(2), 24501.060(B)(4), 24510.063(B)(2). *See generally Jones v. Comm'r of Soc. Sec.,* 478 F. App'x 610 (11th Cir.2012) (per curiam), *Land v. Comm'r of Soc. Sec.,* 494 F. App'x 47 (11th Cir.2012) (per curiam).

(R. 2670). Plaintiff complains the ALJ erred by stating Levasseur "had consistent findings as [Zelenka, another state agency psychologist] with regard to claimant's limitations" (R. 2670). Plaintiff claims Levasseur opined she would still suffer from social limitations even if she was not abusing substances in contrast to Zelenka who opined that "when sober and with some allowances, [she] retains the mental ability to carry out simple instructions and to relate appropriately to others in a routine work setting" (R. 484). Thus, Plaintiff characterizes Levasseur's findings as more limiting than Zelenka's findings and posits that Levasseur's findings support a conclusion that she has social limitations even when not abusing substances. Zelenka completed a Psychiatric Review Technique (PRT) providing a "current evaluation" of Plaintiff for the period of "June 30, 2009, through January 20, 2010" (like Levasseur's, before the post-dependency period) (R. 468-484). On the PRT Zelenka opined Plaintiff had a primary diagnosis of alcohol dependence; major depressive disorder, recurrent; and anxiety disorder not otherwise specified (R. 480). Zelenka also completed a Mental Residual Functional Capacity Assessment (MRFC) on January 20, 2010. As the ALJ noted, Zelenka opined in Section III Functional Capacity Assessment of the MRFC that "it was obvious that the claimant's alcohol abuse was significantly limiting her behavior and concluded that when sober and with some allowances, she retained adequate mental ability to carry out simple instructions and to relate appropriately to others in a routine work setting" (R. 484, 2648).

While Zelenka and Levesseur's PRTs and MRFC Functional Capacity Assessments are not identical, both psychologists generally noted that Plaintiff's medical records showed that once she is free of alcohol her mental status exams and assessments improved (R. 480, 661). Both Zelenka and Levesseur opined in their MRFC Section I summaries that Plaintiff had mild to moderate limitations and more importantly explained in their Section III assessments that records reviewed showed no evidence of mental disorder and normal mental examinations once detoxed (R. 468,

10

661).[5] Looking at Levasseur's MRFC, I cannot conclude Levasseur's opinion with regard to social limitations in the post-dependency period is as clear cut as Plaintiff describes. On the MRFC Section III Functional Capacity Assessment, Levasseur stated: "She is able to understand and follow instructions. She is able to demonstrate a cooperative attitude. She is able to make basic work decisions. She is able to adapt adequately to work environments. She has some reduction in concentration that would limit pace and persistence occasionally but not at a level that would significantly reduce productivity. She has some reduction in social interaction/ stress tolerance that would limit her to work environments of low social demand." (R. 665). I find the ALJ considered the totality of the record evidence when crafting her RFCs, and despite Plaintiff's contrary assertion, I find that the administrative record supports the ALJ's notation that Levasseur and Zelenka's opinions were "consistent."

Review of the decision shows that in reaching her post-dependency RFC, the ALJ considered Plaintiff's ability to work part-time as a community pool supervisor; her activities of daily living; her mostly stable mental status exams after she stopped abusing alcohol; her improving GAF scores; and her subjective reports about her symptoms and anxiety. *See* R. 2670-2673. The ALJ considered Plaintiff's treatment records as well as opinion evidence subsequent to Levasseur's June 17, 2010 review (R. 2654-2673). Specifically, she discussed a July 19, 2011, consultative examination with Malcolm Graham III, Ph.D.: "At the end of the Dr. Graham's report, he noted that the claimant spends most of her day working at a local pool as a pool supervisor, making $5.00 an hour. She makes dinner, eats, and may attend an AA meeting. She was working five days a week, and on weekends, she might go to the beach. The claimant stated that she had been doing this since May 2011." (R. 2654). The ALJ noted that Graham's mental status examination showed "[s]he was able to relate information in a rational, coherent, and sequential

---

[5] *See* n.4, *supra*.

fashion, and there were no indications of hallucinations or perceptual disturbances. The claimant answered questions fairly easily and without prompting, and she did not appear to be overly guarded or evasive. There were no problems with attention or concentration or in her recent or remote memory." (R. 2654). In arriving at her post-substance abuse RFC, the ALJ also discussed opinion evidence, assigning "great weight" to the opinion of the testifying medical expert, Dr. Buitrago. The ALJ explained she found Dr. Buitrago's opinions "consistent with claimant's mental status examination findings during this period, which show some ongoing moderate limitations in concentration, persistence, in pace and no more than mild limitations in understanding, remembering, or applying information; interacting with others; adapting and managing herself for 12 continuous months. It is also supported by her work activity and activities of daily living, which all further establish these findings during this period" (R. 2671).

Summarizing the evidence, and supporting her RFC, the ALJ stated:

> At times, the claimant reported complaints of paranoia of others, particularly groups of people, and auditory hallucinations (Exhibits 46F, 49F, 60F, 63F); however, she continued to engage in seasonal work as a pool monitor despite these complaints. In addition, she reported that her symptoms were controlled as long as she was compliant with her medications (Exhibits 49F/2-7, 29-36; 63F/ 4-7; 65F/34-36), though there are indications in the record that she was not always compliant (Exhibit 49F/20-22).

(R. 2668). The ALJ discussed Plaintiff's activities:

> The claimant was also able to engage in seasonal work as a pool monitor/supervisor during this period (Exhibits 35F/36F). Her treatment records also document other activities that reflect greater functional abilities than those indicated in her testimony. For example, she told Dr. Graham that she makes dinner, attends AA meetings, and goes to the beach on the weekends (Exhibit 35F). In June 2012, the claimant reported that she was getting good results from her medications, and she had been doing housework and laundry and had been going to the pool (Exhibits 26F, 49F/65-66). Her SMA records also indicate that she talked with friends, listened to music, and read (Exhibits 49F, 63F). In June 2014, the claimant reported that she just got back from seeing her youngest son graduate from high school in another state (Exhibit 60F/6-9), and in September 2014, the claimant reported that she was going back to Illinois to see her sons and other family members (Exhibits 63F/4-7, 65F/34-36).

(R. 2669). The ALJ's thorough discussion of the record evidence from the post-substance abuse time frame provides substance evidence supporting her RFC and her decision to assign "partial weight" to Levasseur's opinions.

Plaintiff's assertions of error are similar regarding another state agency psychological consultant, Ronald Chase, M.D. The previous ALJ failed to state the weight given to Chase for the post-dependency period, and Plaintiff claims the ALJ erred by failing to comply with the Appeals Council's remand order that directed her to weigh Chase's opinions. In its remand order, the Appeals Council noted that Chase had opined Plaintiff had "moderate tolerance to criticism from others and authority figures," greater limitations than the prior ALJ included in the RFC for the post-dependency time period." *See* Order of Appeals Council, R. 2821.

Chase reviewed records and completed his PRT and MRFC as part of the SSA's reconsideration level disability determination on September 23, 2011 (R. 871-873). On his MRFC assessment, Chase described his assessment as "current." (R. 871). The MRFC assessment form indicates that "The questions below help determine the individual's capacity to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes." (R. 871). In the crucial "narrative" portion of MRFC, when asked to "[e]xplain in narrative form the sustained concentration and persistence limitations indicated above," Chase provided:

> A review of objective and subjective MER indicates the following assessment of the mental residual functional capacity:
> Understanding and Memory: The claimant retains capacity to remember work locations and procedures, and to understand and remember short, simple instructions as well as those that are more detailed. The claimant's attention and memory were essentially intact as indicated by MER/MSE and professional opinion.
> Sustained Concentration and Persistence: Given Claimant's psychological symptoms, adherence to schedules may be compromised to some degree and claimant may experience some difficulty with attendance and punctuality (B7). Similarly, there may be some limitation in the ability to perform tasks consistently for extended periods and to maintain a consistent work pace (B11). The claimant appears able to make at least simple

13

work related decisions and sustain work activities without being overly distracted by coworkers or requiring special supervision.

(R. 871-872). When asked to "[e]xplain in narrative form the social interaction limitations indicated above," Chase provided:

> Social Interaction: The claimant's social skills are grossly intact for general situations. However, there may be some diminution in claimant's ability to get along with coworkers and/or peers without distracting them or exhibiting behavioral extremes (C15).

(R. 872). Lastly, when asked to provide "additional explanation" on the MRFC, Chase provided:

> Overall, the totality of evidence in file indicates that there are mild to moderate mental limitations. Although at times claimant may experience some psychological symptoms and associated emotional distress, residual functional capacity for a wide variety of both simple and complex tasks is largely retained from a psychological perspective. Historical as well as current data reveals a pattern indicating that when not influenced by drugs and alcohol, claimant's behavioral/ emotional symptoms are diminished and she is able to perform gainful activity, which she is currently doing. This conclusion is supported by the clinical and functional evidence. In summary, the claimant retains the ability to perform at a level reflected by this MRFC assessment.

(R. 872). In the "additional explanation" section, Chase also indicated:

> MSS/MSO: Statements and opinions of a(n) acceptable medical source(s) have been considered and accepted. MER reveals a pattern of findings generally consistent with MDI.
> A-Clmt has the mental capacity to perform SSRTs.
> B-Claimant has ability to pay attention, understand, concentrate and/or perform simple tasks in a timely manner.
> C-Has moderate tolerance to criticism from others and authority figures
> D-No recent history of psychosis, formal thought disorder or diagnosed gross cognitive dysfunction.

(R. 873). Unlike the previous ALJ who failed to state the weight given to Chasse's opinions, the new ALJ weighed Chase's opinions for the post-dependency period and assigned them "partial weight." Specifically, she explained:

> The undersigned gives partial weight to the opinion of the State agency psychological consultant, Ronald Chase, M.D., dated September 30, 2011, that the claimant has the mental capacity to perform simple, routine, repetitive tasks; has the ability to pay attention, understand, concentrate and/or perform simple tasks in a timely manner, and has moderate tolerance to criticism from others and authority figures (Exhibit 7A). Dr. Chase stated that historical and current data revealed a pattern that, when not influenced by drugs and alcohol, the claimant's behavioral and emotional symptoms were

14

diminished, and she was able to perform gainful activity, which she was currently doing. The undersigned gives great weight to the overall finding that the claimant is less limited when not abusing substances. The hearing level evidence establishes that the claimant has mild to moderate limitations in all areas of mental functioning during the period when the substance abuse is not established as material, which is supported by her history of mental health hospitalizations with stabilization once she stopped drinking. It is also supported by the claimant's mental status examination findings as discussed above herein, her work activity and activities of daily living, which all further establish that the history of substance abuse was not material and the mental impairments produced mild to moderate limitations for 12 consecutive months during this period.

(R. 2671).

Plaintiff complains that the ALJ erred by failing to provide any reasons why she failed to account for Dr. Chase's opinion regarding her social limitations in the RFC assessment. The Commissioner acknowledges that when the ALJ assigned only "partial weight" to Chase's opinions overall, she specified the discreet part of Chase's opinion to which she assigned "great weight." In weighing Chase's opinions, the ALJ stated that "the hearing level evidence establishes her mild to moderate limitations in all areas of mental functioning" (R. 2671). The ALJ specified that the hearing level evidence from the period when the substance abuse was not established as material included mental status examination findings, work activity and activities of daily living (R. 2671). As the Commissioner notes, Chase reviewed very little evidence from the post-dependency time frame that began July 1, 2011. In reaching her post-dependency RFC, as already discussed above with regard to Levasseur's opinions, the ALJ considered all evidence in the record including evidence received by the SSA as well as evidence received by the ALJ that was not before the state agency consultant (R. 2653-2673). Upon review, I find that it is clear from the ALJ's discussion of Chase's MRFC and from her discussion of all of the record evidence that the ALJ did not accept Chase's social limitations.

As required, the ALJ included in her RFC the "mental limitations" she found supported by the record evidence; substantial evidence supports her post-dependency RFC. For these reasons, I find the ALJ did not err in weighing the opinions of state agency consultants Levasseur and Chase

15

and assigning partial weight to them.  Her lengthy discussion reflects that she followed the applicable regulations and that substantial evidence supports her RFCs.  Before closing, I will address several important matters applicable to the ALJ's consideration of both Levasseur's and Chase's opinions.  As the Commissioner noted, the VE's testified that even with additional limitations to occasional interaction with the public, occasional interaction with coworkers, and occasional interaction with supervisors, Plaintiff would be capable of performing the three jobs identified by the VE and adopted by the ALJ (R. 2754).  Hence, notwithstanding my conclusion that the ALJ did not err in weighing Levasseur's and Chase's opinions, I find any error by the ALJ in failing to include social limitations in her post-substance abuse RFC would have been a harmless error in light of the VE's testimony that the jobs of housekeeping cleaner, cafeteria attendant, and routing clerk could all be performed if the hypothetical individual had social limitations "limit[ing] [her] to occasional interaction with the public, occasional interaction with coworkers, and occasional interaction with supervisors" (R. 2653-2754).  *See, e.g., Markuske  v. Comm'r of Soc. Sec.*, 572 Fed.Appx. 762, 767 (11th Cir. 2014) (failure to include a limitation is harmless error if that limitation would not have changed the VE's answer or the ALJ's legal conclusion) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that a mistake by the ALJ that does not affect her ultimate conclusion is harmless error)).  The Dictionary of Occupational Titles (DOT) entries for at least two of these jobs (housekeeping cleaner and routing clerk) indicate they require no hearing or talking, and they are "not significant" for interacting with people." *See* DOT, Cleaner, Housekeeping, No. 323.687-014, 1991 WL 672783 (4th ed. 1991); Router, No. 222.587-038, 1991 WL 672123 (4th ed. 1991).  And for the third job, cafeteria attendant, the social interaction is still considered "not significant" as the only required social interaction is "serving" and that portion of the job is considered only "occasional" (1/3 of the time) talking and hearing. *See* DOT, Cafeteria Attendant, No. 311.677-010, 1991 WL 672694 (4th ed. 1991).

The ALJ has provided the reviewing court with a sufficient basis for a determination that she has followed proper legal principles. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). To the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot.  If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence, the Commissioner's decision must be affirmed even if I would have reached a different conclusion.  *See Bloodsworth*, 703 F.2d at 1239.  This Court may not re-weigh the evidence and reach its own conclusions about a claimant's RFC. *See Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir.2004).  Thus, even if substantial evidence supported a more restrictive RFC, this Court must affirm if the ALJ's decision is supported by substantial evidence. *Edwards v. Sullivan,* 937 F.2d 580, 584 n. 3 (11th Cir.1991).

*D. Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on May 1, 2020.

                                                  */s/ Mark A. Pizzo*
                                                  MARK A. PIZZO
                                                  UNITED STATES MAGISTRATE JUDGE